SEXTON, Judge.
The natural father and natural mother appeal two separate judgments terminating their parental rights as to their four minor children, C.P., M.P., J.P. and H.P. For the reasons that follow, we affirm.
On October 7, 1983, the state filed a petition to terminate the parental rights of the parents as to their four minor children. The petition alleged that the children were placed in state custody due to their abuse and neglect in that the family had no home, no food, and no suitable clothing for the children. It also stated that the child, M.P., had multiple cigarette burns on his chest, legs and arms which precipitated his being placed in foster care at the age of two years. On April 11, 1984, the trial court signed two separate judgments, the first of which terminated parental rights as to C.P., M.P. and J.P., and the second terminating parental rights as to H.P. The parents have appealed these judgments, urging five assignments of error.
In these proceedings, the state seeks to terminate parental rights pursuant to the provisions of LSA-R.S. 13:1601-1605, and specifically 13:1601 D, which reads in pertinent part:
§ 1601. Petitioning for the termination of parental rights
The court on its own motion may order that the district attorney petition, or the district attorney in his discretion may petition, for the termination of parental rights of the parent or parents of an abused, neglected, or other child within a juvenile court’s jurisdiction, when the grounds set forth in the petition meet all the conditions of Subsection A, B, C, D, E, or F of this Section. The district attorney may appoint any attorney representing the Department of Health and Human Resources as a special assistant district attorney for the purpose of prosecuting any such case, regardless of the domicile of said special assistant.

D. (1) The child has been in the custody of a child welfare department or other person, pursuant to a judicial order, for a period of at least one year.
(2) The child was removed from the custody of the parents by judicial order due to the parent’s abuse or neglect of the child.
(3) The parent is unfit to retain parental control and there is no reasonable expectation of reformation on the part of the parent or parents.
(4) The child is an abused or neglected child, the Department of Health and Human Resources has made every reasonable effort under the circumstances to reunite the child with his parents, and the department recommends that it would not be in the best interest of the child to be reunited with his parents.
■ Appellants argue that LSA-R.S. 13:1601 D as applied to them is unconstitutional. They contend that the termination of their parental rights under this section in reality punishes them for their alcoholism, and as such is excessive or cruel and unusual punishment prohibited by both the *902 state and federal constitutions. In support of their argument, appellants cite Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), in which the United States Supreme Court struck down as unconstitutional a criminal statute making it a misdemeanor to be a narcotics addict.
The United States Supreme Court has consistently refused to equate termination of parental rights litigation with criminal proceedings. In Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), the court refused to provide indigent parents with an absolute right to court appointed counsel, as mandated in criminal cases. In Santo-sky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court found that a legislative body might well conclude that the “beyond a reasonable doubt” standard of proof mandated in criminal cases would erect an unreasonable barrier to state efforts to free permanently neglected children for adoption. In Lehman v. Lycoming County Children’s Services, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982), the court denied federal habeas corpus collateral review, which would be available to state convicts, to a parent whose rights were terminated by a state court.
Recently, in State in the Interest of A.E., 448 So.2d 183 (La.App. 4th Cir.1984), writ denied, 449 So.2d 1026 (La.1984), counsel for a comatose mother argued that due process required that she be afforded the same protection as a criminal defendant similarly situated, i.e., the proceedings to terminate her parental rights must be stopped until her competence was regained. Noting the similarity between the proceedings because of the gravity of the interest affected, the court nevertheless distinguished the litigation from criminal proceedings:
There are two private interests to be considered in any parental rights termination case: those of the parents and those of the children. In Lassiter, the U.S. Supreme Court declared it “clear beyond the need for multiple citation” that parental rights constitute an interest “far more precious than any property right” and that a termination of parental rights is a “unique kind of deprivation.” Lassiter, 452 U.S. at 27, 101 S.Ct. at 2159. The potential loss to the parent is grievous, perhaps more so than incarceration. State in re Howard, 382 So.2d 194, 198 (La.App. 2nd Cir.1980).
On the other hand, children have a profound interest, often at odds with those of a parent, an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long term, continuous relationships in contrast to the lingering uncertainty of foster care. Lehman v. Lycoming County Social Services, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).
* * * * * *
In criminal proceedings, there is only one private interest, those of the defendant. In these proceedings there are two, those of the mother and those of the children.
We therefore believe that the parents’ reliance on Robinson is misplaced. The present proceedings involve charges of conduct which may give rise to criminal prosecution. State in re Howard, 382 So.2d 194 (La.App. 2d Cir.1980). However, the instant proceedings were not initiated in an attempt to punish appellants for their status as alcohol abusers, but were instead a reasonable exercise of the state’s “parens patriae” interest in the welfare of these children. See LSA-R.S. 14:403 A.
Moreover, we note that the judgment terminating the parents’ rights was not based on the singular allegation of their alcoholism, but was based on a combination of conditions which lead the trial court to believe that termination of parental rights was, under these circumstances, warranted. Appellants claim that they were punished for their alcoholism, and that this punishment constituted excessive punishment is rejected.
*903 Appellants also assail the constitutionality of LSA-R.S. 13:1601 on other grounds. They argue that the statute, in sub-section D, gives the Department of Health and Human Resources a role as a fact finder and judge in litigation to which it is a party and, consequently, denies the opposing parents’ due process of law. In a similar vein, appellants contend that this alleged adjudicative role statutorily bestowed on D.H.H.R. denies the parents access to the courts in contravention of Article 1, Section 22 of the Louisiana Constitution of 1974. Their arguments rest on the provisions of sub-section D which provides that an element of the state’s burden of proof for termination is the Department’s recommendation that being reunited with his parents is not in the child’s best interest.
This argument is, however, flawed. LSA-R.S. 13:1603 A provides in pertinent part:
§ 1603. Adjudication of termination
A. Whenever the court of proper jurisdiction finds that the allegations of Subsection A, B, C, D, E, or F of R.S. 13:1601 are proven true by the evidentia-ry standards set forth in this Section, it may order the termination of parental rights of the parent or parents against whom the allegations are proven.
* * * * * *
Under Subsection D of R.S. 13:1601, Paragraphs (1), (2), (3), and (4) must be proven by clear and convincing evidence.
This statute clearly vests the decision making power as to termination of the parental relationship with the court. Although it is true the state cannot meet its burden of proof under LSA-R.S. 13:1601 D if the Department recommends that the child be reunited with the parents, the opposite recommendation does not automatically result in termination of parental rights. The court, as fact finder and judge, must determine that each element of the state’s burden of proof has been discharged by competent evidence, the totality of which attains the requisite evidentiary standard. We therefore reject appellants’ constitutional attack upon LSA-R.S. 13:1601.
Appellants direct their next constitutional challenge to LSA-R.S. 13:1603. They contend that this statute does not comport with due process in that it fails to require the state to prove its case beyond a reasonable doubt. LSA-R.S. 13:1603 A requires that each of the four elements of LSA-R.S. 13:1601 D must be proven by clear* and convincing evidence.
The determination of what procedural safeguards are required by due process depends upon the nature of the proceeding and the nature of the right or interest protected by the proceeding. Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The rights of parents to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and viligant protection under the law. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Consequently, these proceedings which would irreversibly terminate a parent’s rights must comport with the highest standard of due process, Lassiter v. Department of Social Services, supra; State in re Delcuze, 407 So.2d 707 (La.1981).
In Santosky v. Kramer, supra, the United States Supreme Court found that the clear and convincing evidence standard of proof struck a fair balance between the rights of the natural parents and the state’s legitimate concerns. The court held that such a standard adequately conveyed to the fact finder the level of subjective certainty about his factual conclusions necessary to satisfy due process. Santosky further held that the determination of the precise burden was a matter of state law properly left to state legislatures and state courts, so long as the burden was at least *904 equal to that of “clear and convincing evidence.”
Our Louisiana Legislature has provided that termination of parental rights litigation instituted under 13:1601 D must be proven by clear and convincing evidence. In assigning this evidentiary standard, the Legislature has complied with the due process standards as defined by the United States Supreme Court in Santosky. See State in the Interest of Wisham, 452 So.2d 366 (La.App. 1st Cir.1984). This specification of error is without merit.
The natural parents also contend that the trial court erred in admitting certain documents into evidence, claiming that the documents constituted hearsay.
At the hearing, counsel for the natural father made a joint objection on behalf of both parents to certain documents offered by the state, viz.: an affidavit dated November 17, 1980 prepared by Doris Henry, a social worker employed by the Ouachita Parish Office of Human Development, in support of removal of the three children from their parents’ care; a notation dated March 6,1981 by a civil deputy in reference to the transportation by a deputy of both parents to a E.A. Conway Hospital on specified dates; a report dated October 30, 1981 prepared by Doris Henry, to apprise the trial court in accordance with the provisions of LSA-R.S. 13:1580.2 of the developments toward achieving a permanent plan for the oldest three children, and the attached confirmations of family team conferences; an affidavit by Doris Henry dated July 8, 1982, in support of removal of the youngest child, H.P., from her mother’s custody; and an annual report prepared by social worker Evelyn R. Aubrey, required by LSA-R.S. 13:1580.2, dated February 25, 1983, in reference to the youngest child.
The reports in question were prepared by either Doris Henry or Evelyn R. Aubrey. Both testified at the hearing and were available for cross-examination. The admission of the remaining document, the notation by the civil deputy, while hearsay, created no prejudice to the parents. This assignment, therefore, lacks merit.
In their final argument, appellants contend that the state failed to sustain their burden to prove each of the four elements of LSA-R.S. 13:1601 D. In particular, they argue that the children were not removed from their custody by judicial order due to their abuse or neglect of the children.
Because a termination of parental rights is such a severe and permanent action, the law requires the state to meet an onerous burden of proof before termination will be ordered. State in the Interest of Quitter, 445 So.2d 101 (La.App. 2d Cir. 1984). As previously discussed, with respect to termination actions brought under LSA-R.S. 13:1601 D, the state must prove each of the four required conditions of termination by clear and convincing evidence.
The record reveals that appellants lived together in a common law relationship in Alabama until September of 1980 when they moved to Louisiana. Upon their arrival, the parents did not live together, but saw each other sporatically. The children C.P. and M.P. were removed from their parents’ care on September 19, 1980, when their mother voluntarily agreed to place them in foster care. On that date, the mother entered into a ninety day agreement with the Office of Human Development listing certain conditions which would enable her to be reunited with her children, such as securing housing for herself and her unborn child. The father was at this time incarcerated in the West Baton Rouge Parish Jail.
On November 12, 1980, ten days after the birth of J.P., his mother entered into a similar agreement with the state with respect to his care.
On November 17, 1980, a judge signed an instanter order granting D.H.H.R. the temporary care, custody and control of the minor children, C.P., M.P. and J.P., for the purpose of protecting them from further abuse and/or neglect, pending the completion and investigation into the matter.
*905 Thereafter, the state held a 72-hour detention hearing, and the court, after hearing the evidence, continued the custody of the children with the state pending the adjudication hearing. On February 9, 1981, the state filed a petition in accordance with LSA-R.S. 14:403 seeking to determine the custody of the oldest three children. On May 4,1981, when the adjudication hearing was scheduled, the parents and the state stipulated that custody of these three children would remain with D.H.H.R. in order to allow the parents to establish a home for the children and “get back on their feet.” At that time, the mother was unemployed and the father was incarcerated at the Monroe City Jail. Because of the stipulation, the children were not formally adjudicated as victims of neglect or children in need of care as a result of the February 9, 1981 petition. This petition for termination of parental rights was the next legal event concerning the oldest three children.
The mother’s contention with respect to the oldest three children is that since there was no formal adjudication of these children, the state failed to prove that the children were removed from her custody due to her neglect or abuse of them. We disagree.
In State in the Interest of Boudreaux, 427 So.2d 891 (La.App. 1st Cir.1983), writ denied, 432 So.2d 267 (La.1983), the First Circuit was presented with a similar argument. There, the parents-appellants argued that the judicial order required by subsection D(l) must be a valid judicial order, and since they were never given notice of a hearing either prior to or subsequent to the ex-parte order removing custody, the said order was void ab initio. The appellants further contended that the conditions prescribed in subsection D(2) of LSA-R.S. 13:1601 were not met because the judicial order removing custody was invalid and the evidence relative to the child’s neglect or abuse was in dispute. The court held that the ex parte order was validly issued under LSA-R.S. 14:403 G(6), and further held that the record clearly established that the child was neglected when she was taken into protective custody-
Likewise, in the case at bar, the court, acting under the authority granted in LSA-R.S. 14:403 G(6), issued the instanter order of November 17, 1980. The order specifically states that the children were removed due to their abuse and/or neglect. Moreover, the record supports this finding.
The testimony indicates that the mother had no place to stay, no money, and no food when she arrived in Monroe. M.P., the second child, who has a congenital heart deformity, had small circular sores on his legs, arms and chest, the appearance of which the social worker likened to cigarette burns. The mother did not contest the fact that the child had small untreated circular sores over his body but claimed that the sores were insect bites.
After J.P. was born, the mother was joined by the father in Monroe. On November 12, 1980, the parents were arrested when they were found drunk on the streets begging for money for their infant. A social worker was called to the jail. She discovered that the parents had no residence, no clothes for the baby, only one can of milk, and four or five oversized diapers. The mother admitted that she was provided with lodging and given money with which to pay rent and buy food following the removal of her oldest two children, but that she squandered the money because she was unsatisfied with her accommodations. The child J.P. was examined by a pediatrician and was found to weigh only five pounds, ten and one-half ounces and to be suffering from diaper rash and a left inguinal hernia. We find that these facts support the initial issuance of the instanter order which constitutes a valid judicial order removing custody for purposes of LSA-R.S. 13:1601 D(2).
With respect to the youngest child, H.P., the mother’s argument differs. H.P. was born on May 24, 1982. On July 9, 1982, an order was issued granting temporary custody of the child to D.H.H.R. for the purpose of protecting her from further abuse *906 and/or neglect. A petition to determine the continued custody of H.P. was filed October 8, 1982. This petition alleged that the child’s father was unknown. H.P. was adjudicated a child in need of care and a victim of neglect by her mother by judgment signed December 6, 1982. The judgment further ordered that permanent custody of the child be awarded to D.H.H.R. pending further court order. H.P. was placed in a foster home with one of her siblings.
The mother argues that although H.P. was specifically adjudicated a victim of neglect and child in need of care, this adjudication can have no effect because the mother was not afforded counsel at this proceeding.
In Lassiter v. The Department of Social Services of Durham County, supra, the United States Supreme Court held that due process does not require the appointment of counsel for indigent parents in every parental status termination proceeding. This decision recognized that:
In its Fourteenth Amendment, our Constitution imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair. A wise public policy, however, may require that higher standards be adopted than those minimally tolerable under the Constitution. Informed opinion has clearly come to hold that an indigent parent is entitled to the assistance of appointed counsel not only in parental termination proceedings, but also in dependency and neglect proceedings as well. Most significantly, 33 States and the District of Columbia provide statutorily for the appointment of counsel in termination cases. The Court’s opinion today in no way implies that the standards increasingly urged by informed public opinion and now widely followed by the States are other than enlightened and wise. [Citations omitted]
In State v. Howard, supra, this Circuit held that:
Considering the fundamental and constitutional right of parents to the custody and control of their children, the adversary nature of abuse/neglect custody proceedings which involve charges of conduct which may give rise to criminal prosecution, the grievous nature of the loss which parents face through indefinite or prolonged separation from their child, and the imbalance of the power and ability of the state to present its side of the case as opposed to that of the parents, we hold that a minimum standard of due process under both the federal and state constitutions requires that counsel be furnished at state expense to indigent parents faced with charges of neglect and the possibility of removal of their child from their custody for an indefinite or prolonged period of time, unless the parents knowingly and intelligently waive their right to counsel. Necessarily implicit in this holding is that the parents be advised of their right to counsel. This holding applies to proceedings initiated under LSA-R.S. 14:403 and to child in need of care proceedings initiated under the Code of Juvenile Procedure.
The Howard decision also held that the procedure provided by Articles 51, 95 and 96 of the Code of Juvenile Procedure, which deal with advisement of right to counsel and appointment of attorneys for the child, should equally apply to the parent.
In the case before us, the mother was unrepresented at the adjudication hearing for H.P. The record does not reflect that the procedure established in Code of Juvenile Procedure Articles 51, 95, and 96 were followed. The minutes do not reveal an advisement of counsel until the initiation of the termination proceedings. The transcript contains only a brief mention of an attorney by the trial court at the adjudication hearing:
By The Court: You don’t have a lawyer? Are you contending that you should be restored the custody of this child?
By [Mother]: I am working towards it now that I’m back in Louisiana.
By The Court: All right. Let’s swear the first witness.
*907 Considering this record, we are compelled to agree with the natural mother that the judgment of December 6, 1982 adjudicating H.P. a child in need of care and the victim of neglect cannot satisfy the requirement of LSA-R.S. 13:1601 D(2) since it was obtained in derogation of her right to counsel.
Notwithstanding, H.P. was removed from her mother’s custody by a valid instanter order issued July 9, 1982. The evidence reflects that the order was issued due to the mother’s gross neglect of this child. The natural mother brought the baby to the social worker’s office on June 23, 1982. Upon pediatric examination, the child was found to have severe thrush, which is an infected condition of the mouth, and a yeast infection. The child had only gained nine ounces since birth, which the doctor found to be an abnormally low weight gain. H.P. was hospitalized after her mother said she suffered convulsions. In her overnight stay in the hospital, the child gained two ounces. Tests performed at the hospital indicated that the child had not suffered convulsions. On July 6, 1982, the social worker received complaints that the mother was constantly walking the streets with the baby and taking the baby to bars late at night. There were further allegations that the child was not being fed. The mother still had no permanent home for herself or her child.
We find that this record demonstrates that H.P. was being seriously neglected when she was taken into protective custody of the court. Since there was a valid judicial order removing the child from custody due to her abuse or neglect, the provisions of LSA-R.S. 13:1601 D(2) have been satisfied. This assignment, therefore, lacks merit.
The father argues that since he was not mentioned in the order adjudicating H.P. a child in need of care or a victim of neglect, there has been no judicial removal of the child from his custody. Contrary to this assertion, it appears that the child H.P. was never in the father’s custody. At the time of the 72-hour detention hearing on July 9, 1982, appellant-father appeared and denied paternity of the child. At the time of the adjudication hearing, his paternity of the child H.P. was not as yet established. Therefore, the adjudication order does not mention him. At the termination hearing, the child’s birth certificate listing appellant as father was admitted into evidence without objection.
Nevertheless, the adjudication order was preceded by the instanter order of July 9, 1982, which we have previously found to be valid. At the time of its issuance, the father contested the paternity of the child, spent most of his time in jail for drunk and disorderly conduct, and did not contribute to the child’s support. We therefore find under the circumstances presented in this record, that the July 9, 1982 order which granted custody of the child H.P. to D.H. H.R. was sufficient to form the basis of termination of parental rights litigation as to her father. This specification lacks merit.
We further reject appellants' claim that the state failed to prove the remaining elements of LSA-R.S. 13:1601 D. The record clearly shows that while the children were in foster care, D.H.H.R. made great efforts to reunite the family but were unsuccessful.
The father was consistently arrested and incarcerated for drunk and disorderly conduct and was once ejected from the courtroom because of his inebriated condition. He failed to exercise many of his visitation privileges with the children, and only made one court appearance during the abuse, neglect and termination proceedings. Dr. Bobby Stephenson, a clinical psychologist, examined the father and testified that at some time in the past the father had a rather severe psychological disturbance, probably a schizophrenic process, which was now in remission. The doctor testified that the father regretted having his children taken away, but had resigned himself to the fact that he could not maintain himself independent of alcohol and provide a home for them. The doctor stated that the prognosis for the father’s reform was very *908 poor; he felt that there would be a continuation of alcohol abuse and dependency on social service agencies. He also stated that he felt that the father had the potential for becoming abusive when drinking.
The mother testified that almost every time she went to the social worker’s office, the workers explained to her what goals she needed to achieve to restore the family unit. She acknowledged that had she attained the goals set for her by the social worker, she would have been reunited with her children. She remained, however, uncooperative. In the nearly four years her children were in foster care, she worked approximately one week. Moreover, she admitted that had she looked for work, she could have found a job. The mother did not arrange for permanent housing and reported forty-nine different addresses to social workers during the time her children were in the state’s custody. She frequently resided with men who tended to abuse her. At the termination hearing, she testified that she did not know how she would take care of the children if they were tendered back to her for care.
Although she kept virtually all of her monthly visitation periods with the children, the social worker testified there was little interaction between the mother and her children. Additionally, the mother admitted that she had spanked her small child, M.P., in the hospital when the child was awaking from a general anesthetic following surgery, allegedly because the child threw something at her.
Dr. Stephenson also interviewed the mother. He reported that the mother, unlike the father, was not an abusive personality. He stated, however, that the mother was an extremely dependent personality who was primarily concerned with her own needs. He stated that her children took a low priority in her life.
The ease workers for these four children testified that the children were well-adjusted in their foster homes, and that the foster parents wish to adopt the children.
After reviewing the record in this case, we find that the elements of LSA-R.S. 13:1601 D have been met by clear and convincing evidence. We therefore affirm the trial court’s judgment terminating parental rights.
The attorneys for the children and both parents have made motions for compensation for their appellate representation.
LSA-R.S. 13:1602 C states that an attorney shall be appointed by the court to represent the sole interest of the child, and an attorney shall be appointed by the court to represent the parent or parents if the court determines that such parent or parents are indigent and unable to employ counsel solely for that reason, in accordance with C.C.P. Arts. 5091-5098.
Therefore, in accordance with LSA-R.S. 13:1602 C, it is ordered that the following attorneys, Percy A. Ford, Jr., Charles A. Traylor, III, and Nancy F. Gilliland, be compensated in the amount of $500 each, to be taxed as costs of these proceedings.
Judgment affirmed and attorneys’ fees fixed for appellate services.
AFFIRMED.