938 So.2d 1107 (2006)
STATE of Louisiana In the Interest of S.A.C.
No. 41,474-JAC.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2006.
*1108 Steven Randal Thomas, Mansfield, for Confidential Party, S.A.C.
Brian C. McRae, for Appellant Laquita Shana Casey.
Minifield & Harper by Pamela Harper Jacob, for Appellee State of LA Dept. of Social Services.
Joseph D. Toups, Jr., for Appellee James Lacee Thomas.
Before PEATROSS, MOORE and LOLLEY, JJ.
LOLLEY, J.
Laquita Shana Casey appeals a judgment of the 11th Judicial District Court, Parish of DeSoto, State of Louisiana, which, following a hearing, terminated her parental rights as to S.A.C. For the following reasons, we affirm.

FACTS
Laquita Shana Casey is the mother of S.A.C., a female child born August 22, 2003. On or about September 25, 2003, Casey brought the child to the LSU Health Sciences Center emergency room in Shreveport, Louisiana, stating that the baby was in pain from a minor surgery she had on September 22, 2003. Upon examination the child appeared normal; however, S.A.C. was admitted in order to monitor Casey's behavior which concerned the hospital staff. During S.A.C.'s time at the hospital, Casey displayed several incidents of erratic behavior including one occasion where she was found nude in the middle of the hospital room stating that she had contracted a disease from wearing her boyfriend's underwear.
Casey also had a history with the Department of Social Services, Office of Community Services ("OCS"). In 2001, OCS investigated the suspicious death of her infant male son. During this investigation, OCS found that there was physical abuse and inadequate supervision regarding Casey's two other minor daughters. The minor daughters were removed, and after failing to complete her case plan, guardianship was given to the children's godmother.
In light of Casey's behavior at the hospital and her history with OCS, S.A.C. was removed from Casey's custody and was adjudicated as a child in need of care. The initial goal was reunification of S.A.C. and Casey. However, OCS contended that Casey failed to substantially comply with the case plans, and, subsequently on December 19, 2005, OCS filed a Petition for Involuntary Termination of Parental Rights of Casey and the father. At the hearing, Dana English, the case manager, and Dr. Jody Meek, Casey's psychiatrist, testified for OCS. Casey testified on her own behalf. After hearing all the testimony, *1109 the trial court agreed with OCS and terminated Casey's parental rights. Casey perfects this appeal.

DISCUSSION
Laquita Casey, mother of S.A.C., assigns as error that the state failed to prove by clear and convincing evidence that (1) there is no reasonable expectation of reformation in the foreseeable future, and (2) that there has been no substantial parental compliance with the case plan. The issue of parental compliance with a case plan, the parent's expected success of rehabilitation, and the expectation of significant improvement in the parent's condition and conduct are questions of fact in a proceeding for termination of parental rights. State ex rel. A.R.H. v. Hines, 35,800 (La.App.2d Cir.02/27/02), 810 So.2d 1166. An appellate court cannot set aside a trial court's findings of fact in the absence of manifest error or unless those findings are clearly wrong. Id. In the instant case, a review of the record reveals no manifest error in the trial court's findings.
In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. State, in the interest of L.B. v. G.B.B., 02-1715 (La. 12/04/02), 831 So.2d 918. In Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the Supreme Court held that the clear and convincing evidence standard of proof strikes a fair balance between the natural parents' rights and the State's concerns for the child's welfare and placement in a permanent home. Title X of the Louisiana Children's Code governs the involuntary termination of parental rights and codifies the standard set forth by the Santosky court. See La. Ch. C. art. 1015 and 1035.
Specifically, the statutory grounds for involuntary termination of parental rights are set forth in La. Ch. C. art 1015, which provides, in pertinent part:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.
The state must prove, by clear and convincing evidence, a minimum of one of the enumerated grounds provided for in La. Ch. C. Art. 1015, but the trial court must also find that termination is in the best interest of the child. State ex rel. S.M.W., 00-3277 (La.02/21/01), 781 So.2d 1223. This court carefully reviews all appeals of termination of parental rights cases. This review is to ensure that all parties have been afforded the rights guaranteed in these proceedings by statutes and reported case law. Furthermore, this court is very mindful that in affirming the ruling of a trial court that has ordered the termination of the parental rights of one or both parents of a child that it severs the most natural and strongest of all known bonds, that of parent and child. An order of termination of parental rights serves, in fact, as the parental death penalty.
Expectation of Reformation
The substantive elements proving lack of a reasonable expectation of significant improvement in the near future are *1110 set forth in La. Ch. C. art. 1036(D), which provides that this prong may be shown by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
Here, although Casey completed substance abuse treatment, attended parenting and anger management classes, Dana English, the case manager, testified that Casey "continued to exhibit behaviors that were not [indicative of] successfully completing this type of treatment. . . ." Furthermore, within weeks of completing these classes, Casey was arrested and incarcerated for aggravated assault. As for her mental health, Dr. Jody Meek, Casey's psychiatrist for nearly five years, testified that Casey needed long-term mental health treatment, including taking long-term anti-depressant medication. Casey testified that she did not take the medication because she did not think she needed them. On the issue of financial stability, at the time of the hearing, she had quit her job with no future employment secured.
Compliance with the Case Plan
Louisiana Ch. C. art. 1036(C) enumerates the substantive elements proving lack of substantial compliance with a court-approved case plan. This prong may be evidenced by one or more of the following:
(1) The parent's failure to attend court-approved scheduled visitations with the child.
(2) The parent's failure to communicate with the child.
(3) The parent's failure to keep the department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
(4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
(5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions.
In the instant case, Casey was observed having difficulty visiting S.A.C. English testified that Casey had outbursts and cursed during the visits, often forcing the visits to end prematurely. In addition, Casey made threats to agency personnel and OCS transportation workers. As a result, Casey's visits were terminated in February, 2005. English further testified that Casey was not supportive of S.A.C.'s placement, and made several attempts to call the foster parents' home and demanded to speak with S.A.C.
Furthermore, Casey's temper created conflict and strained relationships with *1111 family members. Casey's mother obtained a restraining order against Casey because of continued threats against her. Casey also had an altercation with the guardian of her two older children. In addition, there is evidence that Casey would harass her sister at church for not helping her with S.A.C. Because of Casey's interference with relatives, S.A.C. could not be placed with any of them. However, we do note that S.A.C.'s present foster parents have expressed interest in adopting her. We find that the trial court properly evaluated all of the applicable relevant evidence and ruled accordingly.
We conclude that the state, by clear and convincing evidence, established that it is in S.A.C.'s best interest to terminate Casey's parental rights. Casey did not improve her situation despite being given several opportunities to do so. In light of the testimony and evidence presented at the trial court, we find Casey's arguments without merit.
We further conclude that Casey, as found by the trial court, is incapable of providing S.A.C. with the very essential values that every child has the right to expect. Consistency, stability and nurturing are of critical importance in any young child's life and directly lead to that child's outcome in later life.

CONCLUSION
On review, we affirm the ruling of the trial court ordering the termination of Laquita Shana Casey's parental rights to S.A.C.
AFFIRMED.