STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-251

STATE OF LOUISIANA IN THE
INTEREST OF K.S., K.S., & D.S.

************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. JC 2008-0218
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.

REVERSED AND REMANDED.

Annette Roach
Appellate Counsel—15th Judicial District Public Defender's Office
724 Moss Street
Lake Charles, La. 70601
(337) 436-2900
COUNSEL FOR DEFENDANT/APPELLANT:
    S.S.

William T. Babin
405 West Convent Street
Lafayette, La. 70501
(337) 232-7747
COUNSEL FOR APPELLEE:
    Louisiana Department of Social Services

**Michael Harson**
**District Attorney, Fifteenth Judicial District**
**Michelle Breaux, Assistant District Attorney**
**Post Office Box 3306**
**Lafayette, La. 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Lloyd Dangerfield**
**703 East University Avenue**
**Lafayette, La. 70503**
**(337) 232-7041**
**COUNSEL FOR APPELLEES:**
**K.S., K.S., and D.S.**

**GENOVESE, Judge.**

S.S.,[1] the biological mother of the minor children, K.S., K.S., and D.S., appeals the judgment of the trial court terminating her parental rights and certifying her minor children for adoption. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

Custody of K.S., K.S., and D.S. was placed with the State of Louisiana, through its Department of Social Services, Office of Community Services, renamed Department of Children and Family Services (hereinafter referred to as the State), on February 14, 2008, on the ground of neglect. A stipulation for their continued custody with the State was entered on February 20, 2008. On March 14, 2008, petitions were filed, alleging that each child was in need of care. The children were subsequently adjudicated as children in need of care with their custody being placed with the State pursuant to judgment rendered March 31, 2008.

On October 25, 2010, a Petition for Termination of Parental Rights and Certification for Adoption was filed by the State seeking the termination of S.S.'s parental rights.[2] The petition requested that S.S.'s parental rights be terminated under the provisions of La.Ch.Code art. 1015(5).[3] Specifically, the State alleged the

---

[1]Pursuant to Uniform Rules—Courts of Appeal, Rules 5–1 and 5–2, the initials of the parties are used to protect and maintain the privacy of the minor children involved in this proceeding.

[2]The biological father of K.S. and K.S. is deceased. The biological father of D.S. filed a voluntary surrender of his parental rights which was approved by the trial court. Hence, the termination of the respective biological fathers' parental rights is not at issue herein.

[3]Louisiana Children's Code Article 1015 provides, in pertinent part, as follows:

The grounds for termination of parental rights are:

. . . .

(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation

following:

    a.    The mother has failed to obtain a safe home in order for the children to be returned to her custody;

    b.    The mother's mental illness or mental deficiency has rendered her unable or incapable of exercising parental responsibilities without exposing the children to substantial risk of serious harm, based upon expert opinion and/or based upon an established pattern of behavior;

    c.    The mother has failed to comply with the required program of treatment and rehabilitation services provided in the case plan;

    d.    The condition that led to the removal or similar potentially harmful conditions continue to persist;

    e.    As set forth above, and as also to be shown at the trial hereof, the mother has failed to cooperate in completion of the case plan designed for the reunification of the family; and

    f.    The mother has shown a lack of substantial improvement in redressing the problems which prevent reunification of the family.

The trial court held a termination hearing on December 9, 2010. Following said hearing, the trial court rendered judgment in favor of the State and terminated the parental rights of S.S. S.S. appeals.

## ASSIGNMENTS OF ERROR

S.S. asserts the following assignments of error:

I.

The trial court erred in terminating the parental rights of S.S.[] The court further erred in concluding that S.S.'s failure to disclose her romantic relationship was sufficient to prove by clear and convincing evidence that S.S. had not substantially complied with her case plan and that there was no reasonable expectation for further improvement in her condition or conduct in the near future nor reasonable expectation that she would complete any new requirements of the case plan as deemed

---

of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

necessary for the safe return of the children.

## II.

The trial court erred in finding that termination was in the best interest of the children, especially considering the relationship the children have with S.S.

## <u>LAW AND DISCUSSION</u>

We set forth the burden of proof the State must meet when terminating parental rights in *State in the Interest of Q.P.*, 94-609, p. 4 (La.App. 3 Cir. 11/2/94)[,] 649 So.2d 512, 515:

> Parental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law. *State in the Interest of C.P.*, 463 So.2d 899 (La.App. 2 Cir.1985). On this basis, the Louisiana legislature imposed statutorily strict procedural and evidentiary requirements which must be met before issuance of a judgment terminating parental rights. As explained in *State in the Interest of J*[.], 582 So.2d 269 (La.App. 1 Cir.), *writ denied*, 583 So.2d 1145 (La.1991), the evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parents' failure to comply with all the enumerated conditions relied upon in the specific paragraph(s) of LSA-Ch.C. Art. 1015 before terminating parental rights. Accordingly, this heightened burden of proof requires the State to show not only that the existence of the fact sought to be established is more probable, but rather that the fact is highly probable or more certain. *Hines v. Williams*, 567 So.2d 1139 (La.App. 2 Cir.), *writ denied*, 571 So.2d 653 (La.1990). However, we are mindful that in assessing whether the clear and convincing evidentiary standard was followed in the lower court, we must determine whether the record reflects that the juvenile court manifestly erred. *Rosell v. ESCO*, 549 So.2d 840 (La.1989).

*In the Interest of C.D. and J.C. v. L.C.*, 01-663, p. 2 (La.App. 3 Cir. 10/3/01), 796 So.2d 844, 845-46, *writ denied*, 01-2986 (La. 11/20/01), 801 So.2d 1079.

In the instant matter, the trial court found that the State had met its burden of proving by clear and convincing evidence the grounds for termination of S.S.'s

3

parental rights and that termination was in the best interest of the children.  We disagree.

S.S. asserts on appeal that the real issue regarding her alleged noncompliance with her case plan was her "dishonesty" with regard to her relationship with her boyfriend, J.C.[4]  S.S. admitted at trial that she had not been completely honest with the State about her boyfriend staying at her house.  She explained that her long-term case manager, Mr. Leon Winters, was aware since 2009 that she was in a relationship with someone.  According to S.S., Mr. Winters told her that he was going to have J.C. evaluated.  In fact, J.C. participated in two visits that "went excellent." Since he was allowed visitation with the children, S.S. did not think that the State had a problem with their relationship.

When Courtney Lanclos, a new case manager, took over, S.S. was not forthcoming about being romantically involved with someone.  She explained that she was afraid that she was doing something wrong which may cause her to get in trouble with the State.  However, we agree with S.S. that "part of the problem with this case is each party's interpretation of what 'living with' means."  S.S. explained that her boyfriend was working in Shreveport, and, when he would come into town, he would spend the night at her home.[5]  According to her testimony, he was not there all of the time.  Rather, he would stay at her house on Fridays, Saturdays, and Sundays.  S.S. testified that she was confused because she believed that J.C. staying at her house from Friday to Sunday was not the same thing as "living with her."[6]

---

[4]This was of particular concern due to prior abuse of the children by a prior live-in boyfriend, which is what lead to the State's initial involvement in this matter.

[5]Her understanding from Mr. Winters was that this was permissible.

[6]We note that the other evidence of record as to their living arrangement was introduced through the testimony of Ms. Lanclos, who testified that she was informed by the Housing Authority

With respect to the other requirements of S.S.'s case plan, Ms. Lanclos testified that S.S. had substantially complied with her plan. According to Ms. Lanclos, S.S. had completed parenting classes and had completed the Sexual Abuse Response Center program. Additionally, although money management had previously been a problem, S.S. had "done very well with managing her bills[,]" had been going to Gamblers Anonymous where "she was making some progress[,]" and "[had] maintained financial stability" since 2009. Ms. Lanclos also testified that S.S. completed her psychological evaluation. Additionally, although S.S. had not received the individual counseling that had been recommended, Ms. Lanclos testified that one facility declined to render services to her because she failed to meet the criteria for their program. A second facility declined to render services to her, stating that she was not in need of their services. With respect to housing, S.S. had a home separate from her father (who was not allowed to be around her children because of the abuse he had subjected her to as a child), and she had been current on her rent for eight months.

However, the State argues that "completing a case plan is not only attending the sessions and the classes[,] but also benefitting from them." The State places much emphasis on the testimony of Dr. Ed Bergeron, who was accepted by the court as an expert in clinical psychology. Dr. Bergeron testified that "while [S.S.] was apparently attending all of her classes and counseling and everything else, she was going through the motions, but she was not benefitting." Dr. Bergeron was of the opinion that S.S. has a dependent personality disorder. Because she "was engaging in deception[,]" he concluded that "the problem still exists." According to Dr. Bergeron, it could be one

_____

that his name was on the lease.

to several years before S.S. would see significant improvement from treatment depending upon her motivation.

Dr. Bergeron evaluated S.S. on only two occasions, March 25, 2008 and February 12, 2010. He testified that "she actually was able to generate normal profiles." At that point, Dr. Bergeron felt that "everything turned out pretty well[,]" and he concluded "that [he] did not detect any active mental disturbances that would preclude her from functioning as a primary caregiver."

We find it noteworthy that Dr. Bergeron had no personal knowledge of what transpired in the ten-month period between his last visit with S.S. in February of 2010 and the time of trial, other than his having been "informed that she was involved with a man[.]" Dr. Bergeron admitted, "once [he] was informed of the situation, then [he] just went ahead and wrote an opinion . . . based on what [he] was told." Dr. Bergeron also testified that after he changed his recommendation, there was a request by the State that he do a family assessment, but he "didn't see the point of it." Despite this request by the State, Dr. Bergeron concluded that S.S. "clearly was not ready to be a primary caregiver[.]"

Additionally, as it relates to S.S.'s second assignment of error, we acknowledge the importance of the relationship S.S. has with her children. Ms. Lanclos testified that S.S. loves her children and that the children are bonded with her. The children have expressed an interest in being reunited with their mother. Their current placement is not a permanent placement, and their foster care parents have no interest in adopting them. Moreover, given their ages of ten, nine, and six, Ms. Lanclos testified that it would be hard to find an adoptive placement for the children. Considering the facts in this case, we conclude that termination at this juncture is not

6

in the best interest of these children.

This court has recognized that "[p]arental rights to the care, custody, and management of children is a fundamental liberty interest warranting great deference and vigilant protection under the law." *State ex rel. V.F.R.*, 01-1041, p. 2 (La.App. 3 Cir. 2/13/02), 815 So.2d 1035, 1036-37, *writ denied*, 02-797 (La. 4/12/02), 813 So.2d 412 (quoting *In re J.K.*, 97-336, p. 4 (La.App. 3 Cir. 10/29/97), 702 So.2d 1154, 1156). Additionally, in considering the matter before us, we are mindful of the instruction provided to us by our supreme court in *State ex rel. J.A.*, 99-2905, p. 9 (La. 1/12/00), 752 So.2d 806, 811, that we "must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens." "Moreover, as the second circuit has recognized, '[a]n order of termination of parental rights, serves, in fact, as the parental death penalty.' *State ex rel. S.A.C.*, 41,474, p. 3 (La.App. 2 Cir. 8/23/06), 938 So.2d 1107, 1109." *State ex rel. B.O.G.*, 08-1103, p. 13 (La.App. 3 Cir. 3/4/09), 5 So.3d 1018, 1026.

S.S. has substantially complied with her case plan and has exhibited a willingness to do what is necessary to be reunited with her children. The children have a bond with their mother, and they, likewise, would like to be reunited. Considering the record of these proceedings, the facts do not warrant "the parental death penalty." *Id.* "Because of the finality of the termination of one's parental rights, it is far better to err in favor of reunification than to err on the side of termination." *Id.* at 1027.

Having thoroughly reviewed the record of these proceedings, we find that the State failed to satisfy its burden of proof by clear and convincing evidence the

7

requirements of La.Ch.Code art. 1015(5) and that the termination of S.S.'s parental rights is in the best interest of the children at this time. Thus, we find manifest error in the ruling of the trial court that S.S.'s parental rights be terminated and that the children be certified for adoption. Though it is clear that there is a problem which needs to be addressed, we are not convinced that termination at this juncture is the solution to the problem. S.S. should be afforded one final opportunity to achieve the goal of reunification with her children.

For the foregoing reasons, we reverse the trial court's judgment terminating the parental rights of S.S., reestablish custody of the children with the State, Department of Children and Family Services, and reinstate S.S.'s case plan. We order an updated evaluation of S.S. by the State and an evaluation of J.C. (if he is still involved in a relationship with S.S.). We also order an updated evaluation on S.S. by Dr. Bergeron, or someone of similar standing designated by the State if Dr. Bergeron is unwilling or unavailable, and that person is to submit a report of his findings to the State. S.S. is given one last opportunity to substantially and satisfactorily complete her case plan with the goal of reunification. Should S.S. falter or default, then the State, in its discretion, may proceed once again with termination of her parental rights.

## DECREE

For the foregoing reasons, the judgment of the trial court terminating the parental rights of S.S. is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

**REVERSED AND REMANDED.**

8