HAWKES, J.
We are confronted with a situation where a trial court: 1) sheltered minor children without taking sworn testimony to establish a factual basis justifying shelter; and 2) adjudicated children dependent without competent, substantial evidence to support the only allegation in the petition for dependency that would justify a finding of dependency. Because of these errors, we reverse.

Background

Appellant was the custodial parent of his 16-year-old stepson, 14-year-old son, 12-year-old daughter, and 10-year-old son. On January 16, 2003, Appellant left his 16-year-old stepson in charge while he went for an anticipated one-day trip to Jacksonville. He instructed his stepson to contact neighbor and long-time family friend, Chantel Harper, if they needed anything. It was alleged that while in Jacksonville, Appellant concluded it was necessary to take immigration papers to his fiancee in the Dominican Republic. He called to let his children know he would be away for a few days, then left the country.
The next morning the children got into an argument, and the daughter called her mother. When the mother learned the children had been left alone, she called the Department of Children and Family Services (DCF). When Appellant called home, he learned his former wife and a DCF investigator were there.
DCF filed a dependency petition alleging inadequate supervision and threatened harm, specifically, that Appellant had a history of leaving the children alone, and had left them for four days on this occasion, January 2003, without making adequate arrangements. Two arraignment hearings were held. Pursuant to orders entered following each hearing, Appellant retained custody of the children. Notably, there were no instructions regarding supervision of the children should Appellant again leave the country.
Subsequently, Appellant again went to the Dominican Republic. He left his sons with Chantel Harper and his daughter with Christy Slack, the mother of his daughter’s best friend. Appellant gave Harper written authorization to act on his behalf to get each child from school and get them medical treatment, if necessary. While Appellant was away, his 14-year-old son became ill at school. Because school personnel could not contact Appellant, they called Harper to get the child.

The Shelter Order

Shortly after the second trip, a preliminary hearing was held on the petition for dependency. The court took no sworn *305 testimony or evidence of any kind, and made no inquiry regarding the allegations contained in the dependency petition.
Instead, the DCF attorney informed the court that DCF recently learned Appellant had been out of the country again, and DCF did not know who had been taking care of the children. The 14-year-old son had been sick at school during that time, and DCF alleged the school could not reach anyone to take him home. The DCF investigator learned the 16-year-old stepson had been arrested for fighting at school and for driving without a license, and the 14-year-old had vandalized a house on the military base where Appellant and his children lived. When the court asked what DCF was requesting, DCF’s attorney stated “that he [Appellant] not leave the country, and supervise these kids.” DCF did not seek to shelter the children.
The court then questioned Appellant regarding the new allegations. Appellant responded that, at the time of the most recent trip, he left his children with Harper and Slack. Appellant explained his 14-year-old son had thrown rocks at a boarded-up house on the base, which a neighbor reported. Appellant further stated the fight his 16-year-old stepson had been arrested for occurred almost a year previously, and his stepson had received a ticket for driving without a license. Appellant only allowed him to drive “up the street.”
Immediately after hearing Appellant allowed his stepson to drive without a license, the trial court stated she wanted the children sheltered and would allow Appellant only supervised visitation. This was done sua sponte, without notice to Appellant.
Appellant’s attorney asked why the court was allowing only supervised visitation when there was no physical threat to the children. The court replied Appellant allowed his stepson to drive without passing the written test. Appellant’s attorney stated that did not constitute a threat of physical harm from visiting Appellant. The court responded there were “allegations of him not being able to supervise, and then he goes off and leaves them once again, and when I ask him who the babysitter is, he can’t even remember who his daughter is staying with.”[1] With no notice, no sworn testimony, and without even inquiring as to the allegations contained in the dependency petition, the court sheltered the children, allowing Appellant only supervised visitation.
A few days later, a shelter review hearing was held. However, the only sworn testimony taken at this hearing related to Appellant’s income for purposes of child support. The court’s order continued the children in shelter, and found probable cause to believe the children were dependent based on allegations of abuse, abandonment, or neglect. The court found DCF’s appraisal of Appellant’s “home situation” indicated a substantial and immediate danger to the children which could not be mitigated by the provision of services, and the children could not safely remain in the home. Appellant was again allowed only supervised visitation. By entering these shelter orders, the trial court erred.
Sections 39.401(1) and 39.402(1), Florida Statutes, require that, before a court may order a child taken into custody or sheltered, it must receive sworn testimony to establish probable cause to support a finding that the child has been abused, abandoned, or neglected, or is in imminent danger of illness or injury as a result of *306 abuse, abandonment or neglect. Here, although two hearings were held, the court did not place anyone under oath or take sworn testimony of any kind before ordering the children sheltered. Significantly, the court did not even inquire about the allegations contained in the dependency petition, but instead focused only on new allegations, primarily the driving, that DCF admitted were under investigation.
Even if the facts relied upon by the trial court had been presented through sworn testimony, they were insufficient to establish a basis to shelter the children, because they did not evidence abuse, abandonment or neglect, as those terms are defined by statute.
We also note that even if the trial court had evidence before it which would have warranted sheltering the children, which it did not, there was absolutely no evidence that Appellant’s visits should be supervised. There was neither evidence nor allegation that Appellant had endangered the children in any way when they were in his care.

The Dependency Order

An adjudicatory hearing was later held where sworn testimony was taken. Following the hearing, the trial court adjudicated the children dependent. In its order of adjudication, the court found it was in children’s best interest to remain in the mother’s custody under DCF supervision. The court allowed Appellant only supervised telephone contact with the children, and permitted the mother to tape record Appellant’s conversations with the children.
As support for the adjudication, the trial court adopted the allegations contained in the dependency petition, and found: (1) Appellant went to the Dominican Republic in January, leaving the children without supervision or a contact number; (2) the 14-year-old son became involved in criminal mischief while playing outside his home; (3)' Appellant failed to provide the babysitters a contact number when he went on a trip in April; (4) Appellant failed to provide a medical release to his daughter’s babysitter; and (5) Appellant permitted his 16-year-old stepson to drive without passing the written driving test.
“A court’s final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent substantial evidence in the record.” In the Interest of M.F. and M.F. and R.F. v. Dep’t of Children & Families, 770 So.2d 1189, 1192 (Fla.2000). “Competent substantial evidence is tantamount to legally sufficient evidence.” Id. Reversal is required where the evidence is legally insufficient to sustain the trial court’s findings. See D.H. v. Dep’t of Children & Families, 769 So.2d 424 (Fla. 4th DCA 2000). In the case at bar, none of the facts cited by the trial court, either alone or in combination, are legally sufficient to sustain an adjudication of dependency.
An adjudication of dependency is not merely an inquiry by the trial court as to what may be in the best interest of the child. See W.T. v. Dep’t of Children & Families, 787 So.2d 184, 185 (Fla. 5th DCA 2001). It is an interference with the fundamental right of a parent to raise their children. See Padgett v. Dep’t of Health & Rehabilitative Serv., 577 So.2d 565, 570 (Fla.1991) (noting “this Court and others have recognized a longstanding and fundamental liberty interest of parents in determining the care and upbringing of their children free from the heavy hand of government paternalism.”). Such an interference is allowed only when a child is *307 found to be dependent pursuant to Florida law.
Florida law defines a dependent child as one who the court has found by a preponderance of the evidence: “(a) To have been abandoned, abused or neglected by the child’s parent or parents or legal custodians; ... or (f) To be at substantial risk of imminent abuse, abandonment or neglect by the parent or parents or legal custodians.” § 39.01(14), Fla. Stat. (2003). These are not generic terms without meaning. Florida Statutes give these terms specific and distinct definitions. Therefore, we must examine the allegations in the case, and the evidence presented at the hearing, to determine if the statutory criteria exist to support a finding of dependency.

ABANDONMENT

Under Florida law, an abandoned child is one whose parent or caregiver “while being able makes no provision for the child’s support and makes no effort to communicate with the child.” § 39.01(1), Fla. Stat. (2003). There is no evidence that Appellant failed to make provision for his children’s support, or that he made no effort to communicate with them. In fact, the evidence was to the contrary.
When Appellant went to the Dominican Republic the first time,[2] he left his 16-year-old (almost 17-year-old) stepson in charge, and told him to contact neighbor and long-time family friend, Chantel Harper, if they needed anything. There was no evidence that the arrangement for his stepson to contact Harper was inadequate. In the absence of evidence to the contrary, we cannot assume Appellant failed to make appropriate provision for his children’s support.
As for Appellant’s failure to provide the babysitters with a telephone number to contact him while he was traveling in the Dominican Republic, there was no evidence as to why this would be required or that it was even possible for him to do so. Failure to provide a babysitter a contact number cannot constitute abandonment under these facts. The uncontested evidence was that Appellant called his children regularly when he was gone. Thus, he communicated with his children, even if they did not have a telephone number to contact him.
Because there is no allegation or record support that Appellant failed to provide for his children’s support, or that he failed to communicate with them, there is no competent, substantial evidence to support dependency based on abandonment.

NEGLECT

The next ground to consider is neglect. Under Florida law, a neglected child is one who is “deprived of ... necessary food, clothing, shelter, or medical treatment or ... permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.” § 39.01(45), Fla. Stat. (2003).
Here, again, there is neither evidence nor allegation that Appellant failed to provide his children with food, clothing, shelter or medical treatment. The court found Appellant’s failure to provide his daughter’s babysitter with a medical release supported an adjudication of dependency. However, at that time, Appellant had provided Harper with medical releases for *308 each child, in case of an emergency. It would not be necessary to provide a duplicate release to his daughter’s babysitter. In fact, the evidence revealed his daughter had a military card so that if she needed emergency medical treatment, her babysitter could take her directly to the military base. Thus, there is no record support for an adjudication of dependency based on neglect.

ABUSE

The last ground to consider is abuse. An abused child is one who is subjected to “any willful act or threatened act that results in any physical, mental or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired.” § 39.01(2), Fla. Stat. (2003). Here, because there is no allegation or evidence that Appellant caused his children physical, mental, or sexual injury, we must determine whether Appellant caused his children “harm.”
Pursuant to Florida law, “ ‘[h]arm’ to a child’s health or welfare can occur when any person: (a) Inflicts or allows to be inflicted upon the child physical, mental, or emotional injury.... Such injury includes ... 3. Leaving a child without adult supervision or arrangement appropriate for the child’s age or mental or physical condition, so that the child is unable to care for the child’s own needs or another’s basic needs or is unable to exercise good judgment in responding to any kind of physical or emotional crisis.” § 39.01(30)(a)3., Fla. Stat. (2003).
Harm, or leaving the children without appropriate supervision “that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired” appears to be the most colorable basis upon which the trial court could have based its adjudication of dependency. To find the children dependent on this ground would require the court to conduct an inquiry and make a determination, based on competent, substantial evidence, that a child was left: (1) without adult supervision or other arrangements (2) that were inappropriate considering the child’s age, or mental or physical condition, such that (3) the child is unable to care for its needs or another’s basic needs or is unable to respond in a crisis. If the court finds inappropriate supervision, it must then have evidence that the inappropriate supervision “cause[d], or is likely to cause,” the child’s health to be significantly impaired. See § 39.01(2), Fla. Stat. (2003).
There are, therefore, two prongs that must be established. The first relates to supervision inappropriate for the child’s age, and the second relates to the significantly impaired health of the child as a consequence. Here, however, the trial court failed to make this inquiry. There was no evaluation of the evidence presented as to the factors necessary to establish the first prong, and there was absolutely no evidence offered to establish the lack of supervision “causefd] or [wa]s likely to cause” the children’s physical, mental or emotional health to be significantly impaired. § 39.02(2), Fla. Stat. (2003). The only evidence presented related to the first prong, and favored Appellant.
We now turn to the specific findings of the trial court. The triggering event resulting in the filing of the dependency petition was Appellant’s first trip to the Dominican Republic. When Appellant made this trip, his 16-year-old (almost 17-year-old) stepson was left in charge and told to contact neighbor and long-time family friend, Chantel Harper, as needed. There was no evidence offered nor any evaluation made by the trial court to indicate this was inappropriate for the children’s ages, mental or physical condition *309 or that the children were unable to meet their basic needs while he was gone. See § 39.01(30)(a)S., Fla. Stat. (2003).
In fact, the uncontested evidence was that the 16-year-old (almost 17-year-old) was mature and responsible, and that the 12-year-old babysat for other children. Moreover, from the evidence presented, this was a one-time occurrence. However, even if the supervision on this trip was inappropriate, when a court is interfering in fundamental rights, it is not free to assume, without evidence, the second prong, i.e., that there was resulting significant physical, mental or emotional health consequences. Again, this record is devoid of such evidence. Thus, no competent, substantial evidence exists to support dependency as a consequence of this event.
The trial court also found the fact that Appellant’s 14-year-old son threw rocks one time at an abandoned, boarded-up house on the military base contributed to the adjudication of dependency. While a delinquent act, a 14-year-old throwing rocks does not automatically lead to the conclusion that the child was “without supervision or arrangement appropriate for the child’s age or mental or physical condition, ...or that such lack of supervision resulted in significant harm to the child’s health. Many 14-year-olds may have been left without direct supervision and committed similar acts. They are not all dependent children requiring the State of Florida to become involved in their upbringing. The statute requires evidence of inappropriate supervision, causing or likely to cause significant harm to the child’s health. There is simply no evidence to show that in this instance.
Similarly, although Appellant may have exercised poor judgment by allowing his 16-year-old stepson to drive “up the street” without a license, there was no evidence this caused or was likely to cause the health of this child, or the health of the other children, to be significantly impaired physically, mentally or emotionally. “The purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, . or abused.” M.F., 770 So.2d at 1193.
In sum, there was no competent, substantial evidence to support a finding that Appellant abused, abandoned or neglected his children, as those terms are defined by statute. Because there was no factual basis upon which to shelter the children, the trial court’s order removing the children from Appellant’s custody and placing them with their mother under DCF’s supervision is REVERSED. Similarly, because the trial court’s adjudication of dependency is not supported by competent, substantial evidence, it is also REVERSED and REMANDED for proceedings consistent with this opinion.
BOOTH and POLSTON, JJ., concur.

. A review of the transcript indicates Appellant hesitated very briefly before giving the name of the person with whom his daughter was staying.

. Although an issue of concern at the time the court ordered the children sheltered, ultimately, there was no allegation or finding by the court that the second trip to the Dominican Republic rendered the children dependent.