949 So.2d 1128 (2007)
V.J., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D06-1123.
District Court of Appeal of Florida, Third District.
February 21, 2007.
Rehearing Denied March 21, 2007.
Herscher & Herscher and Ilene Herscher, Coral Gables, for appellant.
Anthony C. Musto, Fort Lauderdale; Hillary S. Kambour, for appellee.
Before FLETCHER and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
We have for review the trial court's termination of V.J.'s parental rights. We affirm because we find the trial court's termination of parental rights is supported by clear and convincing evidence of abandonment by V.J., who, entirely of his own volition and choosing, has been a total stranger in the life of his five and a half year old daughter, L.C. Since the time *1129 L.C. was three months old until February 2005, her biological father, V.J., was in prison for two separate burglaries he committed. The biological father, who was eighteen years old when L.C. was born, did not have any contact with L.C. while incarcerated. Additionally, he has never provided support of any kind to L.C. or communicated any desire to make child support payments. Thus, the very able trial judge, Seymour Gelber, was entirely correct in finding that the biological father had abandoned L.C.
Section 39.806 establishes the grounds upon which a parent's rights can be terminated. See § 39.806, Fla. Stat. (2004). Once the Department of Children and Family Services ("the Department") has proven any one of the grounds for termination of parental rights by clear and convincing evidence, the trial court must consider whether termination of parental rights is in the manifest best interests of the child, considering the factors listed in section 39.810.[1]See C.K. v. Dep't of Children & Families, 942 So.2d 469 (Fla. 4th DCA 2006); see also § 39.810, Fla. Stat. (2004).
In this case, the Department alleged, and the trial court found, termination warranted under sections 39.806(1)(b), 39.806(1)(c), and 39.806(1)(e), Florida Statutes. We affirm the trial court's ruling under section 39.806(1)(b), Florida Statutes. Section 39.806(1)(b), Florida Statutes, provides for termination of parental rights in the case of abandonment, citing the definition of abandonment contained in section 39.01(1). See § 39.806(1)(b), Fla. Stat. (2004). That section defines abandonment as:
a situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver responsible for the child's welfare, while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations. If the efforts of the parent or legal custodian, or caregiver primarily responsible for the child's welfare, to support and communicate with the child are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned. The term "abandoned" does not include an abandoned newborn infant as described in s. 383.50, a "child in need of services" as defined in chapter 984, or a "family in need of services" as defined in chapter 984. The incarceration of a parent, legal custodian, or caregiver responsible for a child's welfare may support a finding of abandonment.
§ 39.01(1), Fla. Stat. (2004). The trial court found that the evidence showed V.J. "has never had any type of relationship with [L.C.]" and that "any efforts [V.J.] has made have been marginal at best and do not evince a settled purpose to assume parental responsibilities." Because a review of the trial transcript demonstrates that this conclusion was supported by clear and convincing evidence, we must affirm.
During the first three years of her life, L.C. was either uncared for by her biological parents or shuffled around among numerous short-term caregivers. In contrast, for almost two and a half years, L.C., who lives with her younger sister, has been thriving, bonded, and devoted to *1130 foster parents who desire to adopt the two sisters as soon as legally possible. L.C. and her sister enjoy a positive and loving relationship with foster parents, who they call "Mami" and "Papi." By all accounts, the girls hug, kiss, and display constant affection towards their foster parents. The Administrator of L.C.'s school testified that, although when L.C. commenced school she was "was very withdrawn, reserved, [and] did not interact socially that well," a year later "you see a vibrant child, a happy go lucky child, self-sufficient, makes decisions on her own, and is always smiling and happy." The Administrator testified that she attributes these changes to the "stability," "nurturing environment," and "caring home setting" L.C. has been afforded by her foster parents. The guardian ad litem recommended that L.C. remain with her sister in their pre-adoptive foster home.
The dissent would separate five and a half year old L.C. from the only people who have loved her as parents and ultimately place her in the hands of a biological father who has demonstrated no interest in L.C. during the vast majority of her young life, and is presently unable to provide adequate care as he has not obtained suitable housing or employment to care for L.C. The dissent incorrectly analogizes the facts of this case with those of In re J.B., 923 So.2d 1201 (Fla. 2d DCA 2006). In J.B., the court reversed an order terminating a father's parental rights because the record evidenced that J.B.'s father had actively sought custody of J.B. prior to his incarceration, purchased necessities for J.B., and had visited J.B. at least, if not more than, once a week, even while J.B. was in foster care. Id. at 1206, 1208. In that case, the Second District noted that "[s]ince he has been in prison, [J.B.'s father] has attempted to maintain contact with [J.B.], even though the child's young age makes it difficult for him to establish any kind of bond with him." Id. at 1206. Additionally, the first guardian ad litem appointed to represent J.B. commended J.B.'s father for "working hard at bettering himself at the correctional institution by taking anger management courses, parenting classes, by attending church and AA meetings, and enrolling in a computer course." Id. at 1204.
These facts are drastically different than the facts at hand, as L.C.'s father made only minimal efforts to establish a relationship with her prior to his incarceration, did nothing to contact L.C. or provide for her during his three to four years of incarceration, and only began to receive necessary services after being released from prison. Although we recognize the efforts V.J. made after his release from prison, we cannot ignore the years that have passed during which V.J. did nothing to parent L.C., and the fact that L.C. has now established a stable, consistent life with the only people she has ever known as family. Here, V.J.'s lack of paternal care for L.C. throughout her young life fully supports the trial court's finding of abandonment.
Because we find the trial court's conclusions were supported by clear and convincing evidence, we affirm the trial court's termination of V.J.'s parental rights.
Affirmed.
FLETCHER, J., concurs.
SCHWARTZ, Senior Judge (dissenting).
As in In re J.B., 923 So.2d 1201 (Fla. 2d DCA 2006), a termination based on the same grounds as those asserted in this case, §§ 39.806(1)(b), (1)(c), (1)(e), Fla. Stat. (2004), and on similar facts, I believe that there is a total absence of clear and convincing evidence to support the termination of V.J.'s parental rights for any of those reasons. It is particularly difficult *1131 to understand how the claim of abandonment, upon which the majority primarily relies, can be sustained in light of the testimony that after appellant's incarceration he made every attempt possible to maintain contact with his child; indeed, those efforts resulted in successful supervised visits with the child up to the time of the trial below.
It may or may not be true, as the court stresses, that there are better fathers than V.J. and that the child may be better off with other parents, including the putative ones with whom she now lives. Neither the law nor the Law, however, permits us to use any such test in depriving the person who happens to be her father of his inalienable parental rights. I believe, and genuinely fear, that that is what the court has done.
NOTES
[1] V.J. did not appeal the trial court's finding that termination was in the manifest best interests of L.C.