SHEPHERD, J.,
concurring.
As the majority correctly states, the trial court terminated L.A.G.’s parental rights to three of her four children on a statutory ground of which L.A.G. had no notice until the trial court issued the final judgment. That statutory ground — section 39.806(l)(e), Florida Statutes (2005)— authorizes a court to terminate parents’ rights to their children:
When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or *728 parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a ... case plan....
§ 39.806(1)(c), Fla. Stat. (2005). The termination of one’s rights to his or her children has been referred to as “the parental death penalty.” See, e.g., Michele R. Forte, Comment, Making the Case for Effective Assistance of Counsel in Involuntary Termination of Parental Rights Proceedings, 28 Nova L.Rev. 193 (2003); State ex rel. S.A.C., 938 So.2d 1107, 1109 (La.Ct.App.2d Cir.2006). The circumstances under which the parental death penalty may issue in Florida are expressly set forth in section 39.806. See I.T. v. State, Dep’t of Health & Rehabilitative Servs., 532 So.2d 1085, 1087 (Fla. 3d DCA 1988) (Chapter 39, Florida Statutes, provides the exclusive means whereby a trial court can declare a child to be dependent). To terminate parental rights under subsection “(c)”, the Department or other person with standing must prove: (1) continuing involvement of the parent in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child; and (2) such involvement will endanger the child or children regardless of any services that may be provided to that parent. In re J.D.C. v. Dep’t of Children & Family Servs., 819 So.2d 264, 267 (Fla. 2d DCA 2002) (reversing an order terminating parental rights where the trial court “made no finding that it would be futile to provide services to [the father] or that J.D.C. would be harmed even if services were provided”) (emphasis added); In re C.W.W. v. State, Dep’t of Children & Family Servs., 788 So.2d 1020, 1023 (Fla. 2d DCA 2001) (to terminate parental rights under section 39.806(1)(e), “the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent”).
In this case, the trial court terminated L.A.G.’s rights to M.M., A.M., and Ja.M., based on two incidents: (1) one wherein L.A.G. contacted the children’s ne’er do well father for a few hours while she was on a day pass from her protective drug rehabilitation center environment at “The Village”; and (2) a call by L.A.G. to the deadbeat dad from a public telephone at a nearby gas station. At the time of the first incident, there was no court order in place prohibiting L.A.G. from seeing the father. By the time of the phone call, an order was in place, which stated, “The mother shall have no contact with the paternal grandmother and the father [].” As to whether the children were present on either occasion, L.A.G.’s Village case manager testified, “We’ve never proved that those children were with [the mother].” Thus, from a legal standpoint, the mother’s parental rights as to M.M., A.M., and Ja.M. were terminated as a result of a phone call.[1] The trial court relied upon this same evidence to adjudicate Ju.M. dependent. Remarkably, the “no contact” order does not even purport to cover Ju.M. All the while, as well-pointed out by the *729 majority, L.A.G. did all that she was required to do under her case plan.
It should require no citation of authority to conclude this evidence is insufficient to satisfy the first prong of section 39.806(c) of the Florida Statutes. By no stretch of the imagination can I conclude that by making a telephone call from a gas station L.A.G. “engaged in conduct toward [her] children that demonstrates that [her] continuing involvement ... in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health” of the children. § 39.806(c), Fla. Stat. (2005). See Y.F. v. Dep’t of Children & Family Servs., 893 So.2d 641 (Fla. 2d DCA) (reversing order terminating parental rights under section 39.806(1)(c) of the Florida Statutes (2003) where Department “did not prove, or even argue that the Mother’s failure to complete [parenting] course threatened child in any way”).
Nor can one conclude, as is required by the second prong of section 39.806(c), that continued interaction between L.A.G. and her children would endanger them regardless of any services provided to her. See In re C.W.W., supra. To the contrary, as stated by the majority, the record is “replete” with evidence that the mother (1) fully complied with her case plan, including successfully completing an in-patient drug treatment program to exorcise the demon that started her down the path to Departmental supervision, and (2) has remained drug-free since that time. The trial court nevertheless sought to turn this good news on L.A.G. by stating that, in her opinion, “the Mother did not comply with her Case Plan, because [she] failed to gain insight or benefit from the services provided” (emphasis added), invoking the aforementioned two incidents in support.
I am unaware of any authority supporting termination on the basis of a “lack of insight” without more. I can conclude only that the trial court’s order is based on speculation that L.A.G. would fail in any attempt to comply with a case plan with a goal of reunification. As the Second District aptly stated in analogous, but less promising circumstances, “Such speculation is not a valid basis for terminating parental rights.” In Re: C.W.W., 788 So.2d at 1023.[2] More to the point, L.A.G.’s Village case manager — himself a former addict — tellingly testified: “Recovery [from a drug habit] is not cut and dry. It is a struggle.” This probably explains the two lapses in judgment that were the focal point of the termination and dependency orders in this case. To terminate the mother’s parental rights in this case would be, in my view, to punish L.A.G. This we cannot do. See In re M.F. v. Fla. Dep’t of Children & Families, 770 So.2d 1189, 1193 (Fla.2000) (“The purpose of a dependency proceeding is not to punish the offending parent but to protect and care for a child who has been neglected, abandoned, or abused.”). I believe this case probably is *730 closer to a DCF success story, perhaps as close as it gets, in the difficult field of drug rehabilitation.
To be sure, L.A.G. has not been a perfect mother. Before the filing of the current petition, L.A.G. struggled to throw off her demons. The Department had filed and dismissed an earlier Petition. A substantial history of transgressions had occurred. However, as L.A.G.’s Village case manager testified, L.A.G. moved in with her mother and father in another city and “has a support system in place now.” She has obtained a job and entered an addiction support program. It is quite apparent that L.A.G. has made arrangements to parent her children with parental support in a different environment. According to the Village case manager, “She [is] an excellent mom.” She “fought for [her] kids.” Termination is not appropriate in this case. See D.P. v. Dep’t of Children & Family Servs., 930 So.2d 798 (Fla. 3d DCA 2006) (evidence did not support termination of parental rights where mother had made “great strides” and followed all DCF instructions, except for three alcohol related incidents, including one where it was proven that the child was present).
For these and other reasons evident from the record, it is quite clear that as to M.M., A.M., and Ja.M., the Department did not prove its termination claims by clear and convincing evidence in this case. See I.R. v. Dep’t of Children & Family Servs., 904 So.2d 583, 588 (Fla. 3d DCA 2005). As the majority notes, it appears that the dependency adjudication as to ju.M. simply was “lumped together” with the terminations as an afterthought. See supra p. 727. Generalized adjudications such as this should not be pursued by the Department and likewise should not be countenanced by our trial courts. See In re: S.T. v. Dep’t of Children & Family Sews., 940 So.2d 571, 574 n. 2 (Fla. 2d DCA 2006) (observing “there to be a growing number of appeals in dependency cases in which the Department failed to come forward at trial with the evidence necessary to prove statutory elements as interpreted by case law, and yet the trial court entered an adjudication based on generalized conclusions unsupported by findings of fact”). Therefore, the adjudication of dependency as to Ju.M. also must fail.
I join in the majority in reversing the final judgment below.

. As the majority notes, DCF originally sought termination of L.A.G.'s parental rights to all four children on two other theories: (1) section 39.806(l)(b) of the Florida Statutes (2005) (authorizing termination based upon abandonment); and (2) section 39.806(l)(e) of the Florida Statutes (2005) (authorizing termination when child has been adjudicated dependent, case plan filed, and abuse continues as evidenced by failure to follow case plan). A cursory review of the record reveals it to be devoid of clear and convincing evidence to support any adjudications on these bases. The trial court did well to ignore them.

. The Final Judgment also reflects that the trial court was influenced heavily by a belief that it was in the "best interests” of the children to terminate the parental rights of M.M. A.M. and Ja.M. because "it is expected that the Children will achieve permanency through adoption” and because "it is more likely that the Children will enter into a more stable and permanent family relationship as a result of permanent termination of the Mother's parental rights and duties.” However, "neither the law nor the Law” permits us to engage in such unmoored decision-making. See V.J. v. Dep’t of Children & Family Servs., 949 So.2d 1128, 1131 (Fla. 3d DCA 2007) (Schwartz, J. dissenting). See also A.M.T. v. State, 883 So.2d 302, 306 (Fla. 1st DCA 2004) ("An adjudication of dependency is not merely an inquiry by the trial court as to what may be in the best interest of the child. It is an interference with the fundamental right of a parent to raise [his or her] children.”) (internal citations omitted).