CASANUEYA, Judge.
S.T. appeals the order finding her children, K.C., aged eleven, and D.C., aged six, dependent as to her, primarily because the circuit court believed that she was in denial about the hazard the father’s alcohol and substance abuse presented to the children. She claims the circuit court erred in adjudicating the children dependent, arguing that the evidence does not support the circuit court’s finding that she will fail to protect them from imminent harm caused by their father’s drinking.[1] We agree and reverse, holding that the record does not contain competent, substantial evidence authorizing the circuit court to enter a judgment of dependency as to the mother.
I. Background
This case involves an intact family of four, married parents living with their two biological children. The children do not lack adequate food, clothing, shelter, medical attention, or emotional support and are doing well in school. The father is unemployed, has had debilitating medical issues in the past with present consequences as a result of a motorcycle accident and lengthy coma, and as a young man made errors in judgment resulting in a criminal record. But he has had no involvement with the criminal justice system in any manner for the past ten years or more. The mother is the primary breadwinner for the family. She formerly had two jobs but at the time of the adjudicatory hearing had been laid off from one of them; she was at that time working full-time as a nurse on a night-shift at a hospital, seven p.m. to seven a.m. The father supplements the family’s income with odd jobs of lawn maintenance, handyman services, and auto repair. Based on interviews with the children and the parents’ non-cooperation with the agency, the Department filed a non-shelter petition of dependency in April 2011.
II. The Petition For Dependency
The Department’s petition alleged prospective abuse/neglect by the father and prospective neglect by the mother[2] based on the following allegations. In relation to the father, on a date in January the children reported that the father was drinking beer in his car while he drove them home from school and that he smelled of alcohol. The six-year-old had stated that the father drank every night, and the eleven-year-old confirmed this, adding that the father also smoked marijuana, which she had seen him do recently. When the investigator went to the home, the father instructed the children not to answer the door, was uncooperative throughout the investigation, and refused services. The family had two other reports involving substance abuse, a 2001 report that was closed with some indicators of a substance-exposed child and a 2010 report that was closed with verified findings for substance abuse. The petition claimed that the father’s chronic, extensive, and abusive use of alcohol would likely continue and because of this, the children would remain at substantial risk of imminent abuse and neglect from the father.
*829 In relation to the mother, the petition alleged that the mother was aware of the father’s use of alcohol but denied that he had a problem and allowed the father to transport the children home from school despite his alcohol problem. The mother did not believe what the children had reported about their father’s alcohol abuse and claimed she was being harassed by the Department. Like the father, she also claimed that the family does not need services. Because of the mother’s denial of the apparent problem posed by the father’s drinking, the Department alleged that the children are at risk of neglect from the mother. The Department sought judicial intervention because the children are “presently under substantial risk or imminent threat of harm or abuse or neglect.”
III. The Evidence Adduced At The Adjudicatory Hearing
We underscore that the above facts were the allegations in the petition and do not constitute admissible evidence.[3] Both parents contested the allegations so the circuit court held an evidentiary hearing. Five witnesses testified at the hearing. The Department presented four: the father, the mother, the principal of the school that the eleven-year-old attended, and the kindergartener’s assistant teacher; the mother presented one, a long-time friend, close confidante of the family, and across-the-street neighbor, a sort of surrogate grandmother who had daily contact with the children. No representative of the Department who had had contact with the family testified, nor did either child, nor did any expert witness, such as a psychologist or counselor, who may have interviewed any member of the family.
A. For The Department: The Father’s Testimony
The father of the children was the first witness to testify. He stated that he drank most evenings, usually five-to-six bottles of light beer between six and nine p.m., and occasionally a glass of whiskey and soda. Sometimes he had a beer with friends or coworkers at lunchtime. He was not happy about the Department’s involvement with his family. He claimed that his children were fine and that he had no difficulty in taking care of them. He involved himself with their homework and often read to them or helped them with reading and making sure they did their chores, such as watering the garden and house plants and keeping their rooms neat.
He admitted to having a problem with cocaine more than ten years previously but had not used it since. He was unclear about the last time he used marijuana. As for the children’s purported statements to investigators that he recently used marijuana, he denied the marijuana use and contended the children were coerced into making those statements. He admitted that he had been in substance abuse programs in the past, both outpatient and residential, and stated that some (such as Alcoholics Anonymous) were voluntary and not court-ordered. He had successfully completed most of them. From those programs he learned to live his life day-by-day; to use his energy to take care of his family; and to avoid drugs, the people who used them, and the places where they were *830 used. He went to Crossroads the day before the hearing, of his own volition, to take a drug test. He testified on cross-examination by the mother’s counsel that the results were negative for drugs, but upon questioning by the circuit court, he said he did not take a Breathalyzer test for alcohol. He denied that he was in need of treatment for alcohol abuse, contending that he did not abuse alcohol, his wife, or his children.
As for drinking and driving, the father denied having ever driven with the children in the car while under the influence of alcohol but did admit to transporting beer in his car in a cooler that was not within his reach while he was driving. He used to take his children to and from school daily but at the time of the hearing his license was suspended, so he no longer drove. He claimed the suspension was for failure to pay child support[4] so his wife was currently assuming the duty of transporting the children.
He denied refusing to answer the door when a Department worker first came to the house, denied running out the back to avoid talking to the worker, and denied having ever told his children not to talk to a representative of the Department. On cross-examination, he explained that on the one occasion when a Department worker had come to the house with a police officer to interview the children, he left to secure a third-party witness to the interview. He further denied ever drinking alcohol and then driving with the children in the car.
During cross-examination by his own counsel, the father showed the circuit court a pouch that he used to store the tobacco that he smokes in a pipe and explained that his children had seen him use a pipe with the loose tobacco from the pouch. The circuit court sniffed the pouch and stated that it did not smell like marijuana. The father further explained that although he drank regularly, it was never to the point where he was falling down drunk or could not function the next day for work or had a hangover or blackout. He also denied having memory problems. As for his recent attendance at an Alcoholics Anonymous meeting, he explained that he went because a friend had asked him to accompany him there. And although his intent in going was to support his friend, he still enjoyed some personal benefit from the meeting because of the memories of past attendance.
Lastly, he testified that he regularly drank water from a cup while driving, but he never had alcohol in this cup. He categorically stated that he does not drink and drive and doesn’t drink enough to consider it a problem.
B. For The Department: The Mother’s Testimony
The Department next called the mother to the stand. She testified that she did not believe the father had a substance abuse problem and believed that the children were safe in his care. She said he would never place them in an unsafe environment, and she was comfortable leaving them alone with him. She and the father had been together for about fourteen years and had been married since 2006. She was aware of his past problems with drugs, his drug treatment history, and his criminal convictions. She also knew that he drank beer, usually in the evening or on weekends, but it was not to excess. And although they typically have beer in the house, she did not know if he drank a six- *831 pack in the evening but she had never seen him drunk around the children. She was a moderate drinker of beer herself and, compared to her, some people might consider the father a heavy drinker. But she did not consider him so because he did not drink from morning to night, never got falling down drunk, and functioned well. Whenever she left for her nightshift at the hospital in the evening and the father was not back from his jobs, her stepfather, who lived behind them, or the surrogate grandmother, who lived across the street, was usually there for childcare. She did not think that the father drank while she was at work or when he was at work. She did not believe, when it was reported to her by the Department, that her six-year-old had said that the father drank alcohol while driving with the children. No one, other than Department workers, had ever expressed to her a concern about the father’s drinking. She did not believe that the father needed substance abuse treatment but would support him if the court ordered him to seek it.
Upon further questioning, she explained that the primary reason she transferred the eleven-year-old in the middle of the school year to the school where the six-year-old was attending was to ease the transportation problem of getting them to different schools on time. This move also had the advantage of removing the eleven-year-old from the stigma of often being pulled out of class to be interviewed by Department workers. She denied ever telling either child not to talk to Department workers and never threatened them that they would be taken away from the parents if they talked to the Department.
The mother reiterated that the family is active together. She described the various kinds of activities they enjoyed together and maintained that the children were normal and well-adjusted. She noted that the surrogate grandmother is also very involved with the family, eating dinner with them often and joining in their activities because the children have no blood-related grandparents living.
When queried about how she would react if she found out the father was drinking then driving with the children, she stated she would confront him and be highly upset and appalled and would try to put a stop to it, even going so far as to have him seek help. And she would not allow him to continue driving the children. If she thought he was drinking to excess, she would arrange to have him closely watched and avoid having him around the children by himself. She believed his past motorcycle accident left him with some memory problems, hearing issues, and train-of-thought difficulties. However, these difficulties did not prevent him from gainful employment and being a good father. She had never seen him impaired by alcohol to the extent that he could not go to work. And the children had never come to her appearing upset or showing anxiety about or fear of the father. Since 2002 or 2003 he had mended his immature, wayward, and addictive behavior. Before they had the children, he indulged in risky behavior but has not since. Now he is trustworthy, honest, and does what he needs to do as a husband and father.
On further examination by the Department, she said she had not discussed with him the current allegations about his drinking and driving with the children because she knew the allegations were false. She also disputed the father’s testimony and did not believe that he drank five to six beers a night about twenty-five days out of the month.
C. For The Department: The Elementary School Principal’s Testimony
The third witness the Department presented was the principal of the older *832 child’s former elementary school. He testified to one occasion about a year earlier where he had a feeling that the father might have been intoxicated. The principal had become concerned one day after school when he saw the father, who had come to claim his child, walk up to the school with an uneven gait. He confronted the father, spoke to him about his concern, but did not smell any alcohol on his breath or observe any signs of alcohol impairment. After speaking with the father, the principal became comfortable that the father was not under the influence of alcohol, and they agreed about the importance of not coming to school for the children while under the influence. The principal never had further cause to believe that the father came onto school grounds in an impaired condition. The principal also reported that the father’s child who attended that school had done very well.
D. For the Department: The Assistant Kindergarten Teacher’s Testimony
The Department’s fourth and last witness was the six-year-old’s assistant kindergarten teacher who was very familiar with the child. She testified that on many occasions in the past, when the father walked up the driveway and passed by her on the way to claim his child, the alcohol smell coming from him was noticeable and strong enough to turn heads. These occasions were somewhat earlier in the school year because towards the end of the school year the mother was the parent who was regularly picking up the child. However, the assistant kindergarten teacher did not speak to the father so there was no testimony about her smelling alcohol on his breath. She never observed him get into a vehicle with the child, so never reported her concern because she did not think that he was driving. Had she seen him attempt to drive with his child after smelling alcohol on him, she would have followed the school’s protocol by interceding, taking the child to into the principal’s office, and reporting the situation. She assumed that the father had been drinking or that alcohol had spilled on his clothes on those occasions when she noticed the odor from him. But even on those occasions, he never behaved in a way that made her believe his child was in danger.
At the end of the Department’s case-in-chief, the circuit court denied the mother’s motion for judgment of dismissal.
E. For The Mother: The Surrogate Grandmother’s Testimony
After the Department rested, the mother called a single witness, the surrogate grandmother/neighbor/family friend. She testified to being “like family” for about thirty years, very close to the father and especially his mother when she was alive. And she continued to be very close with these two children. But neither child had ever come to her expressing a problem with either parent. She was aware of the father’s past problems in his younger years but in the last eight to ten years he had abandoned all the risky and troublesome behavior. Since having children, he remained at home most of the time if he was not working. She was aware of his drinking, testifying that he drank maybe two nights out of the five that she was regularly present and up to three to four beers in an evening. She considered that at times he was “buzzed,” but the drinking had never interfered with his ability to interact with or care for his children. She never saw him drink and drive with the children, act like he was drunk, or be belligerent.
At the end of this testimony, the circuit court denied the mother’s renewed motion for judgment of dismissal.
IV. The Circuit Court’s Findings
The circuit court found the children dependent as to both parents, finding that *833 neither parent was a credible witness. The circuit court concluded that either the father was not telling the truth or his addiction to drugs and alcohol affected his memory regarding the details of his alcohol or drug consumption. As for the mother, the circuit court found her testimony “disingenuous at best.” And if it was not disingenuous, the circuit court believed her to be in “complete and total denial of the father’s very clear addiction to alcohol.” As an example, the circuit court noted that the mother did not even believe the father’s own testimony about the extent of his alcohol use.[5] Similarly, she failed to believe her children’s statements about the father’s alcohol use and his drinking and driving. And despite the mother’s knowledge of the father’s past addiction and that a relapse could be likely at any point in his situation, the circuit court stated that she was not concerned enough to monitor him. The circuit court concluded that “[d]ue to the mother’s denial about the father’s serious substance abuse problem, the children are at substantial risk of imminent neg[l]eet from the mother.”
Despite the finding of dependence, the circuit court placed the children in the temporary custody of the parents and ordered that the parents comply with the case plan that the Department had prepared.
Y. Standard Of Review
“A court’s final ruling of dependency is a mixed question of law and fact and will be sustained on review if the court applied the correct law and its ruling is supported by competent, substantial evidence in the record.” C.M. v. Dep’t of Children Family Servs., 997 So.2d 513, 515 (Fla. 2d DCA 2008) (citing R.F. v. Fla., Dep’t of Children & Families, 770 So.2d 1189, 1192 (Fla.2000)). “Competent substantial evidence is tantamount to legally sufficient evidence.” R.F. v. Fla., Dep’t of Children & Families, 770 So.2d 1189, 1192 (Fla.2000). We must give due deference to the circuit court who sat as the trier of fact and had the “first-hand opportunity to see and hear the witnesses testify.” A.D. v. Dep’t of Children & Families, 837 So.2d 1078, 1080 (Fla. 5th DCA 2003). But if there is not competent, substantial evidence in the record to support the circuit court’s final order, the error rises to an abuse of discretion. See Smith v. Smith, 934 So.2d 636, 642 (Fla. 2d DCA 2006) (holding that where there was no competent, substantial evidence that the entire balance on the card was attributable to the wife’s alleged misuse of the credit card, the court’s allocation of the entire balance to the wife in equitably distributing this marital liability was an abuse of discretion).
VI. Applicable Law
Section 39.01(15)(f), Florida Statutes (2010), requires a dependency adjudication if the circuit court finds the children to be “at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.” Such dependency adjudication is authorized “even if no actual abuse is proved.” L.R. v. Dep’t of Children & Family Servs., 947 So.2d *834 1240, 1243 (Fla. 2d DCA 2007). “But this prospective abuse must, indeed, be ‘imminent.’ ” Id. (citing N.D. v. Dep’t of Children & Family Servs., 939 So.2d 1192, 1194 (Fla. 2d DCA 2006)).
VII. Discussion
As petitioner in this dependency proceeding, it is the Department’s burden to prove dependency by a preponderance of the evidence. A.T.N. v. Fla. Dep’t of Children & Family Servs., 70 So.3d 634 (Fla. 1st DCA 2011). The Department must prove that at the hands of then-mother, S.T., the two children are at substantial risk of imminent abuse or neglect in order to have the circuit court declare the children dependent. The Department provided the testimonies of the father, the mother, the older child’s elementary school principal, and the younger child’s assistant kindergarten teacher. The salient features of the circuit court’s final order are its discounting of the testimonies of both parents regarding the extent of the father’s alcohol use and its finding that neither was a credible witness. The circuit court stated that either the mother was disingenuous in her testimony or she was in denial that the father’s drinking posed a threat of imminent harm to the children.
After discounting the parents’ testimonies based on the circuit court’s findings of credibility, it is difficult to discern the evidence the circuit court relied upon to support its determination of dependency as to the mother. The Department’s remaining two witnesses offered no evidence to support the assertion that the father was an alcohol addict. The record establishes that the elementary school principal testified to but one instance that he had a suspicion that the father suffered from alcohol intoxication. And, after conversation with the father, this suspicion was entirely allayed. The principal went further to describe this conversation in which the father agreed with the importance of not coming to pick up children when impaired by alcohol. The assistant kindergarten teacher said the father often gave off an odor of alcohol but never connected the odor to any behavior that might put the children in danger. The teacher did not testify that whenever she spoke with him she smelled alcohol on his breath, but she rarely spoke to him in any event. Except for the alcohol odor emanating from him, the father looked and acted like any other parent. And, most tellingly, she never saw him drive up or drive off with his child while emanating this odor. The evidence from the school employees was not competent evidence of the father’s alcohol use or that it demonstrably affected the children as required by section 39.01(32)(g).[6] See L.R., 947 So.2d at 1245.
The other remaining evidence from a person more familiar with the father’s alcohol consumption than the two school employees was that of the surrogate grandmother.[7] And the court did not find her unworthy of belief. But her testimony also did not indicate excessive alcohol consumption by the father or negative behav *835 ior that might be expected to result in imminent neglect. Furthermore and more importantly, nothing in the surrogate grandmother’s testimony reflected badly on the mother’s behavior. To the contrary, the surrogate grandmother testified that the father’s drinking — which is not a crime — did not preclude him from contributing to the family’s income as much as his physical disabilities allow or from shouldering his share of child care. The surrogate grandmother’s testimony showed that the father was at home whenever he was not working. The circuit court’s inference in its final order that the surrogate grandmother had to often step in after school to care for the children is not supported by the evidence. Because she lives across the street, she appears to be on call whenever the family needs her and often is present in the home without a stated need, only because she had become “like family” according to her own words.
Without competent evidence that the mother knew that the father was endangering the children by his conduct when drinking, the circuit court could not have concluded that the children should be determined dependent as to the mother. Therefore, the circuit court should have granted the mother’s motion for judgment of dismissal at the close of the Department’s case. Neither did the subsequent testimony from the surrogate grandmother — confirming that the father drank several beers in two out of five evenings a week and was sometimes buzzed in the afternoon — provide support for a finding of dependency.
In summary, the Department did not present competent, substantial evidence that the children were in danger of prospective harm, abuse, or neglect from the mother nor did it meet the imminency requirement of section 39.01(15)(f). See A.M.T. v. State, 883 So.2d 302, 309 (Fla. 1st DCA 2004) (holding that reversal was required where the court adjudicated the child dependent without competent, substantial evidence to support the allegations in the petition for dependency). In L.R., 947 So.2d 1240, this court reversed a finding of dependency because of a lack of evidence of substantial risk of imminent harm. In L.R., the father had petitioned for an injunction against domestic violence against the mother, and this was used to ground an order of dependency of the children as to her. The court based the dependency adjudication on findings of violence, failure to protect the children from a violent father, and substance or alcohol abuse. In the opinion, this court discussed at length the lack of competent evidence that the Department presented on any of these three bases which required reversing the order of dependency. The circumstances of L.R. are analogous to S.T.’s and similarly require reversal because the circuit court findings have no basis on any competent, substantial evidence that the Department presented.
VII. Conclusion
The Department’s evidence taken as a whole did not provide substantial, competent evidence that the father’s alcohol consumption and the mother’s consequent behavior has demonstrably affected the children or has put either or both of her children at substantial risk of imminent neglect. There was no evidence that the family requires governmental aid for food, shelter, clothing, or medical needs. The father takes a major role in his children’s lives and seems to function rather well. He no longer drives because he has had his license suspended. The mother’s part in the lives of her children is equally involved taking into account her fulltime employment. Although she is in the nontraditional role as the primary breadwinner, according to outside observers the *836 children are thriving in the parents’ care and have the benefit of an extra-generational support system in the step-grandfather and the surrogate grandmother.
Order of dependency reversed.
KELLY, J., Concurs.
ALTENBERND, J., Concurs specially.

. The children's father, P.C., also appealed the finding of dependency as to him. This court affirmed his appeal on December 28, 2011, without written opinion. P.C. v. Dep’t of Children & Family Servs., 76 So.3d 297 (Fla. 2d DCA 2011) (table decision). Our lengthy discussion of the facts concerning the father is necessitated by the fact that they relate directly to the circuit court’s findings about the mother.

. See § 39.01(15)(f), Fla. Stat. (2010) (defining a dependent child as one found by the court "[t]o be at substantial risk of imminent abuse, abandonment, or neglect by the par-ent_”).

. The petition alleging facts to support an adjudication of dependency was sworn. And sworn allegations can constitute evidence. Cf. Borland v. State, 848 So.2d 1288, 1290 (Fla. 2d DCA 2003) ("Unsworn allegations are not evidence and are insufficient to prove any fact.”). However, the allegations in the Department’s petition constitute inadmissible hearsay. See L.R. v. Dep't of Children & Family Servs., 947 So.2d 1240, 1244 (Fla. 2d DCA 2007). The allegations in the petition resulted from the Department’s investigative efforts and interviews with the children.

. The Department did not further delve into his lack of a license or the reason for the suspension, nor did any other party.

. The circuit court’s final order states that the mother “did not even believe the father’s own testimony regarding his alcohol use.” The transcript indicates it was not a matter of belief on her part. Upon being asked how much the father drank, it is not surprising that her approximation of the amount was different, and less, than his because she left before seven each evening to work nights. And the father testified that most of his drinking was done between dinner and nine p.m. We also note that this time frame of his regular drinking habit is outside the time when the children need transportation to and from school.

. Section 39.01(32) provides:
“Harm” to a child's health or welfare can occur when any person ... (g) exposes a child to a controlled substance or alcohol. Exposure to a controlled substance or alcohol is established by ... 2.[e]vidence of extensive, abusive, and chronic use of a controlled substance or alcohol by a parent when the child is demonstrably adversely affected by such usage.

. Because the surrogate grandmother’s testimony was presented by the mother and not the Department, it could not be part of the analytical equation when the circuit court was considering the mother's motion for judgment of dismissal based on lack of evidence at the close of the Department's case.